OCTOBER AND NOVEMBER TERM, 1883, No. 54. OCTOBER 25, 1883.

## McMurray *et al v.* Kenney.

1. By agreement under seal, A, owning the fee simple in certain lots of ground, covenanted to convey them to B. On the following day, A assigned the agreement to C, and executed a deed to C for the lots in fee. Subsequently, C made a deed to B in fee. Prior to the agreement between A and B, C had verbally agreed to sell the same property to D, who paid the consideration money, and had given written receipts therefor, which set forth that they were given for the purchase money of the lots. D immediately took possession of the premises, and made repairs and improvements thereon. *Held* in an ejectment by the sheriff's vendee of B against D, that the equitable title vested in B at the time of the execution of the agreement between A and B, and that C, when he held the legal title, held as trustee for B.

2. Although the receipts given to D may have constituted a sufficient agreement to convey under the statute of frauds, yet at the time of their date, C had no title, and his subsequently acquired title did not inure to the benefit of D, since the equitable title had then vested in B.

3. The agreement between A and B provided that if B did not meet his payments at the time fixed, he would execute to A, his heirs and assigns, a quit claim or release of all interest in the said premises. *Held*, that the failure to pay at the time agreed on was not *per se* a forfeiture, and that the subsequent acceptance of a mortgage for the purchase money by C, and the execution of a deed by him to B, deprived him of all power to enforce this part of the contract.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, and CLARK, JJ. GREEN, J., absent.

Error to the Court of Common Pleas No. 1 of *Allegheny County.*

Ejectment by T. J. Kenney against John McMurray and Robert Potter for four lots of ground in North Fayette township.

Upon the trial in the Court below before STOWE, J., the following facts appeared:

Both parties claimed the land through James McCandless. On June 1, 1867, McCandless sold to C. H. Love

one hundred and fifty acres of land at Oakdale, Allegheny county, for $15,000, taking a purchase-money mortgage from Love for $10,000. Love laid the property out in lots, in the plan of which lots Nos. 19, 20, 21, and 22 are the property now in dispute. The mortgage not being paid, was foreclosed by McCandless, and the property sold at sheriff's sale in April, 1876. At this sale Love bought in the lots 19, 20, 21, and 22 in the name of James E. Eiken for $875, and not being able to pay the money, McCandless agreed to take them, and the sheriff's deed was made to him.

The plaintiff offered in evidence an agreement under seal, dated November 23, 1876, between McCandless and Love, in which the former agreed to sell, *inter alia*, the lots in dispute to the latter for the sum of $6,716, of which $2,000 was payable February 1, 1877, and the balance April 1, 1877. This agreement provided:

"And it is hereby expressly agreed and understood, that in case the said C. H. Love fails or neglects to pay the said sum of $2,000 on the 1st day of February, 1877, and the balance or remainder of the said purchase money of said lots or pieces of ground on or before the 1st day of April, 1877, then and in that case he, the said C. H. Love, together with his wife, shall execute and deliver to the said James McCandless, his heirs, executors, and assigns, a quit claim and release, in due form of law, of all their right, title, interest, and claim of, in, and to the lots or pieces of ground herein mentioned and described."

The plaintiff also offered in evidence the following assignment, under seal executed by McCandless, November 24, 1876:

"For value received, I hereby sell, assign, transfer, and set over to S. B. W. Gill, all my right, title, interest, and claim whatsoever of, in, and to the within agreement."

Defendant's counsel objected to the offer of the above agreement and assignment, which objection was overruled and an exception taken. (First assignment of error.)

McCandless made a deed for the lots to Gill November 24, 1876. A deed for the lots, from Gill to C. H. Love, dated May 12, 1877, was admitted in evidence under exception. (Third assignment of error.)

Plaintiff then offered a purchase-money mortgage from Love to Gill, dated May 12, 1877, for $3,400, being for the whole purchase money; assignment of said mortgage to T. J. Kenney; *scire facias* upon said mortgage and proceedings thereunder; and deed from the sheriff to T. J. Kenney, the plaintiff, dated February 12, 1881.

The offers were admitted under exception. (Fourth and fifth assignments of error.)

The defendant then gave evidence of the following facts:

On May 4, 1876, Gill made a verbal agreement with the defendant, McMurray, to sell to him the same lots for the sum of $875, and received on account $400. The balance of $475 McMurray paid to him May 11, 1876. For these amounts Gill gave receipts as follows:

" Received of Mr. John McMurray the sum of four hundred dollars on account of the purchase money of four lots, Nos. 19, 20, 21, and 22, in C. H. Love's plan of the McCandless farm, at Oakdale, Allegheny county, Pa., purchased at sheriff's sale by James E. Eiken.

"*May 4th, 1876.*                    S. B. W. GILL."

" Received, May 11th, 1876, of Mr. John McMurray, four hundred and seventy-five dollars in full of the balance of the purchase money of the within-mentioned lots.

"$475 00.                        S. B. W. GILL."

Gill told McMurray to take possession, and the latter did take possession on the 12th of May, 1876, and remained in possession, through his tenants, up to the time of trial, except for a portion of one day. He put some weather-boarding on a small house on the premises, locked up the house with a pad-lock, repaired the floor, made rails on the property, and put up a fence. He also pried the house up and put posts under it. Gill disappeared September 17, 1877, without having made a deed to McMurray.

Defendants offered to prove that at the sheriff's sale on the Love mortgage, a notice was read and served upon the sheriff that the lots did not belong to Love, but were the property of McMurray. Upon objection, the Court rejected the offer, and defendants took an exception (sixth assignment of error).

Plaintiff offered to prove by C. H. Love, in rebuttal, that he was present at the sheriff's sale of this property in 1876; that the property was knocked down at his bid in the name of James E. Eiken; that he paid several hundred dollars on account of the bid to the sheriff; that subsequently he entered into an arrangement with James McCandless, the plaintiff in the writ, under which the property was sold, by which James McCandless was to take the sheriff's deed for this and other property sold at the said sale under the same mortgage, and an arrangement by which McCandless was to take the deed and was to re-convey the lots in controversy in this suit to him, or

[McMurray *et al v.* Kenney.]

to such persons as he might direct; that such agreement was subsequently put in writing, on the 23d of November, 1876, and on the 24th of November, 1876, McCandless conveyed the premises to S. B. W. Gill, with notice of this arrangement between himself and Mr. Love, and, at the same time, assigned the written agreement referred to, which is already in evidence, and that, in pursuance of that agreement, the property was conveyed by S. B. W. Gill to witness, C. H. Love, and a mortgage given for the purchase money by C. H. Love to S. B. W. Gill, and assigned to Thomas J. Kenney, the plaintiff in this suit; that when Gill purchased the property from McCandless in 1876, before the subsequent conveyance to Love, he, Gill, extended the time stipulated in said agreement for the payment of the purchase money.

The offer was admitted under exception. (Second and seventh assignments of error).

Plaintiff then testified as to the facts stated in the offer. He said, *inter alia :*

"I found it was going to take a little more time than I supposed. I spoke about it in the presence of Mr. McCandless and Mr. Gill at the time the agreement was executed . . . and that was the understanding that I could have more. They never asked any quit-claim deed or anything of the kind of either myself or my wife."

The Court thereupon peremptorily instructed the jury to render a verdict in favor of the plaintiff, to which defendant took an exception. (Eighth assignment of error)..

February 6, 1883, verdict for plaintiff, with six cents damages and costs, upon which judgment was afterwards entered.

Defendants then took out a writ of error, assigning errors as set forth above.

*T. Walter Day,* for plaintiffs in error.

The contract between Gill and McMurray, the payment of the money and the receipts therefor, constituted a sale of the land within the statute of frauds. Smith's Ap., 19 P. F. Sm., 480 ; Shoofstall *v.* Adams, 2 Grant, 212 ; McFarson's Ap., 1 Jones, 503 ; Colt *v.* Selden, 5 Watts, 528 ; Ross *v.* Baker, 22 P. F. Sm., 186 ; Burns *v.* Sutherland, 7 Barr, 108 ; Broom's Leg. Maxims, 673–4 ; Moore *v.* Small, 7 Harris, 461 ; Cadwallader *v.* App, 31 P. F. Sm., 210 ; Lowry *v.* Mehaffy, 10 Watts, 387 ; Tripp *v.* Bishop, 6 P. F. Sm., 429 ; Johnston *v.* Cowan, 9 *Id.*, 280 ; Huddleston *v.* Briscoe, 11 Ves., 591 ; Welford *v.* Beezely, 1 Ves. Sr., 8 ; Fowle *v.* Freeman, 9 *Id.*, 351.

In pursuance of this contract, possession was taken, which would take the case out of the statute of frauds: Clarke *v.* Vankirk, 14 S. & R., 354; Bassler *v.* Niesly, 2 *Id.*, 354; Jamison *v.* Dimock, 14 Norris, 52; Colt *v.* Selden, 5 Watts, 528; Miller *v.* Hower, 2 Rawle, 53; Parrish *v.* Koons, 1 Parsons, 91; Billington *v.* Welsh, 5 Binney, 131; Pugh *v.* Good, 3 W. & S., 56; Reed *v.* Reed, 12 Penna., 117; Bassler *v.* Niesley, 2 S. & R., 352; Troup *v.* Troup, 6 Norris, 149; Haslet *v.* Haslet, 6 Watts, 464; Moore *v.* Small, 7 Harris, 461.

Although Gill did not have title when he made the sale to McMurray, the subsequent conveyance to Gill enured to the benefit of McMurray: Clark *v.* Martin, 13 Wr., 303; Patton *v.* Hollidaysburg, 4 Wr., 206; Washabaugh *v.* Entriken, 34 Penna., 74; Tyson *v.* Passmore, 2 Barr, 122; Brown *v.* McCormick, 6 Watts, 60; Foter's Ap., 3 Penna. St., 79.

The agreement to extend the time of payment by Love was void, McMurray having acquired title and Love having notice thereof: Woods *v.* Wallace, 10 Harris, 175; 1 Green Ev. section 275-6; Maul *v.* Rider, 9 P. F. Sm., 167; Patton *v.* Hollidaysburg, 4 Wr., 206; Jamison *v.* Dimock, 14 Norris, 52.

The evidence that the purchaser at sheriff's sale had notice of the McMurray title should have been admitted: Barnes *v.* McClinton, 3 P. & W., 67; Ross *v.* Baker, 22 P. F. Sm., 186; Hill *v.* Epley, 7 Casey, 331; Jamison *v.* Dimock, 14 Norris, 52.

The agreement between McClintock and Love was a mere privilege or option given to Love to have certain property conveyed to whom he might designate, if he paid the consideration at the time specified. If he failed to pay, he was to acquire no title. Time, in this agreement, was of the essence of the contract: 1 Fonbl. Eq., sec. 12, ch. 6; Story's Eq., sec. 776; Westerman *v.* Means, 2 Jones, 97; Bodine *v.* Glading, 9 Harris, 50; Brown *v.* Vandergrift, 30 P. F. Sm., 142; Espy *v.* Anderson, 2 Harris, 308.

*Thomas C. Lazear* and *John F. Edmundson* for defendant in error.

The receipt relied upon does not set out the terms of the contract, nor sufficiently describe the property, nor designate the parties. To take a parol sale out of the statute of frauds, the possession must be exclusive and the boundaries distinctly ascertained: Haslet *v.* Haslet, 6 Watts, 464; Blakeslee *v.* Blakeslee, 22 Penna., 237;

Ackerman *v.* Fisher, 457 *Id.*, 57 ; Bowers *v.* Bowers, 14 Norris, 477 ; Frye *v.* Shepler, 7 Penna., 91 ; Burns *v.* Southerland, *Id.*, 103.

The improvements could be compensated in damages : Moore *v.* Small, 7 Harris, 461 ; Poorman *v.* Kilgore, 2 Casey, 365 ; Cox *v.* Cox, *Id.*, 375 ; Postlethwait *v.* Frease, 7 Casey, 475 ; Harris *v.* Richey, 6 P. F. Sm., 395 ; Mc-Kowen *v.* McDonald, 7 Wr., 441 ; Toe *v.* Toe, 3 Gr., 74 ; Ballard *v.* Ward, 8 Norris, 358 ; Detrick *v.* Sharrar, 14 Norris, 521.

The conveyance to Gill was in trust for Love. The purchaser of an equitable title takes subject to equities to which it was subject in the hands of the person from whom he purchased : Chew *v.* Barnet, 11 S. & R., 389 ; Reed *v.* Dickey, 2 Watts, 459 ; Kramer *v.* Arthurs, 7 Penna., 165.

Adverse possession, to be notice to a purchaser or mortgagee, should be clear, distinct, and unequivocal : Martin *v.* Jackson, 27 Penna., 504 ; Meehan *v.* Williams, 48 Penna., 238.

November 5, 1883, the opinion of the Court was delivered by GORDON, J.

Both parties to this suit claim to have derived title to the land in controversy from James McCandless, and the one and only material question in the case is, who is the rightful possessor of his title ?

McCandless, on the 23d of November, 1876, by articles of agreement duly executed, covenanted, on payment of the purchase money therein set forth, to convey to C. H. Love, whose title the plaintiff below now owns, the several lots of ground, the right of possession to which forms the subject of the present contention.

This agreement was, on the next day after its date, assigned by McCandless to S. B. W. Gill. On the same day of this assignment, McCandless executed to Gill a deed for this property in fee, and on the 12th of May, 1877, Gill conveyed to Love. This brief exhibits a good title in Love.

Against this, the defendant sets up the following receipts :

"Received of John McMurray the sum of four hundred dollars on account of the purchase money of four lots, Nos. 19, 20, 21, and 22, in C. H. Love's plan of the McCandless farm, in Oak Dale, Allegheny county, Pa., purchased at sheriff's sale by James E. Eiken.

"*May 4th, 1876.*                         S. B. W. GILL."

" Received, May 11th, 1876, of John McMurray, four hundred and seventy-five dollars in full, balance of the purchase money of the within-mentioned lots.

"$475.                                          S. B. W. GILL."

It is contended that these constitute a sufficient agreement to convey under the statute of frauds. This may be admitted; but at that time Gill had no title, hence even his most formal conveyance could not have transferred to his vendee land that confessedly belonged to another person. But, it is urged, on the authority of Clark v. Martin, 13 Wr., 299, and similar cases, that Gill having afterward acquired title from McCandless, that title inured to the benefit of McMurray.

The principle thus stated is undoubtedly a correct one, but it cannot apply in this case, since the day before the deed was executed to Gill the equitable title vested in Love.

Thus, Gill never had anything but the legal title, and this he held as trustee for Love, the equitable vendee of McCandless. Of this legal title, McMurray, perhaps, might have compelled a conveyance, had he taken the proper steps for that purpose whilst it was still in Gill, but failing so to do, he now stands wholly without right of any kind.

But it is said the agreement between McCandless and Love was forfeited in consequence of the non-payment of the purchase money at the time fixed by the terms thereof.

In order to understand this proposition properly, we transcribe that part of the contract bearing upon this particular point of the case. It is as follows: "And it is hereby expressly agreed and understood, that in case said C. H. Love fails or neglects to pay said sum of $2,000 on the 1st day of February, 1877, and the balance or remainder of said purchase money of said lots or pieces of ground on or before the 1st day of April, 1877, then and in that case, he, the said C. H. Love, together with his wife, shall execute and deliver to the said James McCandless, his heirs, executors, and assigns, a quit claim and release, in due form of law. of all their right, title, interest, and claim of, in, and to the lots or pieces of ground herein mentioned and described."

Here we find Love agreeing that, if he did not meet his payments at the time fixed, he would reconvey to McCandless, his heirs, or assigns. The neglect of payment was not, therefore, per se a forfeiture, and whether or not the quit claim or release should be insisted upon, de-

[Appeal of Nancy Neel.]

pended altogether upon the will of McCandless or Gill, to whom he had assigned. But neither of these parties ever attempted to enforce this part of the contract, and all right and power to do so forever passed from Gill when he accepted Love's mortgage for the purchase money and executed to him the deed of May 12, 1877.

Under the circumstances as above stated, McMurray's possession, whatever it may have been, amounted to nothing, for it was without right, and was not continued long enough to make title by the statute of limitations.

Judgment affirmed.